IN THE UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH CAROLINA

CHARLESTON DIVISION

| | | |
|---|---|---|
| **Beattie I. Butler**, | ) | C/A 2:15-4455-PMD-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| **D. Ashley Pennington, in his** | ) | |
| **individual and official capacities** | ) | |
| **and Charleston County** | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This action has been filed by the Plaintiff, a former employee of the Charleston County Public Defender's Office, asserting various federal and state claims against the named Defendants. The Defendants Charleston County and Pennington (in his official capacity) filed an answer to Plaintiff's Amended Complaint on April 14, 2016. The Defendant Pennington (in his individual capacity), hereinafter "Defendant", also filed an Answer together with a counterclaim on that same date, and thereafter filed an Amended Answer and Counterclaim on July 8, 2016.

On July 17, 2016, Plaintiff filed a motion to dismiss Defendant's counterclaim pursuant to Rule 12, Fed.R.Civ.P., or in the alternative for more definite statement and to strike improper allegations.[1] Plaintiff's motion for a more definite statement was granted by Order filed

---

[1] Plaintiff had originally filed a motion to dismiss Defendant's counterclaims (he had originally
(continued...)



September 12, 2016. Defendant was directed to file an amended pleading within fifteen days addressing the matters set forth in the Court's Order. Defendant thereafter filed a Second Amended Answer and Counterclaim on September 27, 2016.

Plaintiff filed a motion to dismiss Defendant's Second Amended Counterclaim on October 13, 2016. Defendant filed a response in opposition to Plaintiff's motion on October 31, 2016, to which the Plaintiff filed a reply memorandum on November 10, 2016. Plaintiff's motion is now before the Court for disposition.

**Allegations of the Parties**

Plaintiff's allegations from his Amended Complaint were previously set forth by the Court in its Order of September 12, 2016, and are reprinted herein verbatim as follows:

Plaintiff was an Assistant Public Defender (APD) for Charleston County. The Defendant is the Public Defender for the Ninth Circuit, which includes Charleston County, and was Plaintiff's boss. Plaintiff alleges that at the time of his termination by the Defendant, he was "the most experienced litigator in the Office and was the lawyer most often sought out by other APDs to be second chair or otherwise to aid in the defense of clients charged with serious felonies. Amended Complaint, at ¶ 9. Plaintiff alleges that beginning in late 2007 he became aware of what he considered to be serious misconduct being perpetrated against clients of the Public Defender's Office by attorneys from the Ninth Circuit Solicitor's Office. Plaintiff alleges, however, that the Defendant

---

[1](...continued)
asserted two counterclaims) on May 9, 2016. That motion was mooted upon the filing of Defendant's Amended Answer, which deleted the second counterclaim for tortuous interference with contract and changed it to an affirmative defense. Plaintiff's renewed motion addressed solely the Defendant's remaining counterclaim.



prevented him from reporting this misconduct to the Office of Disciplinary Counsel (ODC). Id., ¶ 10. Plaintiff then proceeds to set out some of these alleged instances of misconduct, and the Defendant's alleged refusal to allow him to report what he considered to be misconduct. Id., ¶¶ 11-23.

Plaintiff alleges that in December 2013 he contributed to a discussion regarding continuing misconduct by the Ninth Circuit Solicitor's Office on the South Carolina Association of Criminal Defense Lawyers ("SCACDL") Electronic List Serv.[2] Plaintiff alleges that he "detailed his experience with the history of ethical lapses in that office and indicated that something should have been done about it a long time ago". Id., at ¶ 24. Plaintiff alleges that in response to this posting, the Defendant instructed him via email that he was not to speak or convey in any manner to others comments that were critical of the Solicitor (Scarlett Wilson) or her office, especially regarding their ethics or honesty, without first obtaining the Defendant's permission. Id., at ¶ 25. Even so, Plaintiff alleges that the SCACDL Board of Directors subsequently voted in January 2014 to file a grievance and send a letter to the South Carolina Attorney General requesting an investigation of the Ninth Circuit Solicitor's Office, and that he both discussed this matter with two members of the SCACDL Board and assisted in drafting the language of the grievance and letter. Id., at ¶ 27.

Plaintiff alleges that during the SCACDL's February 2014 board meeting, the Defendant argued to the Board that Plaintiff was manipulating the SCACDL for his own personal

---

[2]Plaintiff alleges that the SCACDL List Serv facilitates active conversation among criminal defense lawyers regarding issues of criminal law in South Carolina. Plaintiff further alleges that participants on the List Serv generally believe that matters discussed on that forum are not to be shared outside the organization, especially not with prosecutors. Id., at ¶ 14.



agenda and was doing so at the expense of his own clients, and that Wilson would punish the public defender clients and the Public Defender's Office in retaliation for such complaints. Id., at ¶ 28. However, Plaintiff alleges that the SCACDL Board voted to go forward with the grievance and letter despite the Defendant's arguments, following which Plaintiff received an email from the Defendant directing him to turn over all materials he had provided to the SCACDL Board, since Defendant had ordered Plaintiff not to criticize the Ninth Circuit Solicitor's Office. Id., at ¶ ¶ 29-30. Plaintiff alleges that he thereafter began to question whether he had acted contrary to his own ethical duties by previously adhering to the Defendant's directives not to report what he believed to be ethical breaches to the appropriate authority, and that on advice of his own counsel he then drafted a letter to the ODC to "self-report" and explain his previous failure to do so. Id., at ¶ 31.

Plaintiff alleges that on February 27, 2014, the Defendant sent out an office wide email in the Charleston County Public Defender's Office stating that any perceived ethical breach encountered by an APD should first be reported to him so that he could properly investigate the matter and determine how to respond. Defendant further stated that the SCACDL List Serv was not to be used for discussing ethical breaches or his handling thereof. Plaintiff alleges that thereafter an attorney representing him sent a letter to the Defendant on March 3, 2014, taking issue with his directive and informing him of Plaintiff's intent to self-report to the ODC his previous failures to report the Solicitor's office's ethical breaches. Plaintiff alleges he thereafter met with the ODC's staff to satisfy his reporting obligation. Id., at ¶ ¶ 33-34.

Plaintiff alleges that on April 7, 2014 he was diagnosed with cancer and immediately began undergoing an intensive treatment regimen which included chemotherapy and radiation.



4

Plaintiff alleges that although he requested FMLA leave due to his treatment and condition, he never received any official notification from Charleston County's Human Resource Office or any other County office relating to this request. Id., at ¶¶ 35-36. Plaintiff alleges that then, on September 23, 2014, he received an email from the Defendant containing detailed questions and requests for information related to past ethical breaches by the Solicitor's Office and the Defendant's orders that Plaintiff not file grievances about those breaches, with a response due the following day. Plaintiff alleges that at that time he was suffering the effects of his treatments, and requested additional time to respond, but that the Defendant specifically denied his request, and only agreed to give him "slightly more time" because of an accidental death of an APD the previous night. Id., at ¶¶ 37-38. Plaintiff alleges that he then met with the Defendant on September 29, 2014, at which time the Defendant requested further written documentation of his condition and prognosis, and that thereafter the Defendant "abruptly terminated" Plaintiff's employment on October 14, 2014. Id., at ¶¶ 39-40.

In his Amended Complaint, Plaintiff alleges the following claims against the Defendant in his individual capacity: First Amendment retaliation, prior restraint, and protected speech under 42 U.S.C. § 1983[3] (First Cause of Action); Family and Medical Leave Act - interference with statutory rights (Third Cause of Action); Defamation - libel and slander per se (Fourth Cause of Action); and denial of due process under § 1983 (Sixth Cause of Action). See

---

[3] 42 U.S.C. § 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707 (1999).



generally, Plaintiff's Verified Amended Complaint.

As part of his Second Amended Answer to Plaintiff's Amended Complaint, the Defendant asserts a Counterclaim against the Plaintiff for defamation and slander per se. In this Counterclaim, Defendant alleges that after he told Plaintiff that he [Plaintiff] was not authorized to speak to the press on behalf of, or as a representative of, the Ninth Circuit Public Defender's Office without seeking clearance first from the Defendant, that Plaintiff nonetheless "responded to press inquiries from the Post and Courier regarding problems or wrongdoing by the Ninth Circuit Solicitor's Office". See Second Amended Answer and Counterclaim, ¶ 1. Defendant alleges that Plaintiff's constant criticism of the Solicitor's Office reflected badly on the Defender's Office and fostered division within that office, but that when he tried to counsel Plaintiff regarding his counterproductive behavior, Plaintiff was resistant, later becoming hostile. Id., ¶¶ 2-3. Defendant alleges that Plaintiff's conduct created an inference "that [Defendant] was unethical for not reporting the Solicitor and/or her staff members to the South Carolina Office of Disciplinary Counsel and incompetent in leading the Public Defender's Office". Id., ¶ 4. Defendant alleges that this was similar to conduct Plaintiff had engaged in toward the Defendant's predecessor as well as the previous Solicitor, that he was also aware that the current Solicitor had previously filed a grievance against the Plaintiff, and that he came to recognize that Plaintiff held continuing personal animosity against the Solicitor for having filed that grievance against the Plaintiff several years earlier. Id., ¶¶ 5-7.

Defendant alleges that when he refused to publically criticize the Solicitor as Plaintiff wanted him to do, Plaintiff told numerous other attorneys, both inside and outside of the Public Defender's Office, the falsehood that he had ordered Plaintiff not to file a grievance against the



Solicitor, thereby inferring that the Defendant was covering for or protecting the Solicitor at the expense of the best interest of the Public Defender's clients and the community. Defendant identifies nine individuals to whom Plaintiff made this allegedly false statement. Id., ¶¶ 8-9. Defendant further alleges that Plaintiff's statement that he had ordered Plaintiff not to file a grievance was false and defamatory, as it charged the Defendant with actions that inferred he was disloyal to his own office, that he was unethical by failing to zealously represent Public Defender Office clients, and that he was unfit for his profession. Id., ¶ 10.

Defendant also alleges that Plaintiff or his agents contacted South Carolina Lawyer's Weekly Reporter Phillip Bantz on or around April 2014 and repeated this false statement, and that South Carolina Lawyer's Weekly then ran an article repeating the false statement that Defendant had directly ordered Plaintiff not to file a grievance against the Solicitor. Defendant alleges he first learned of Plaintiff's false statement when reporter Bantz called his office seeking comment, and that this false statement was published statewide by the news weekly to South Carolina Bar Members and the broader community both on its website and in its newspaper. Id., ¶¶ 11-13.

Defendant alleges that Plaintiff's statement that he had ordered Plaintiff not to file a grievance against the Solicitor and the repetition of this statement was both false and published by the Plaintiff with the intent of showing Defendant was unethical and unfit for his profession. Id., ¶¶ 14-15. Defendant alleges that Plaintiff knew or should have known that the rules governing the practice of law in South Carolina are self policing, and that if Plaintiff wanted to file a grievance against another lawyer it was his personal responsibility to do so, not any other lawyer's responsibility, and that the Defendant had consistently reminded Plaintiff and all of the other public defender lawyers of their ethical right to file grievances whenever ethics issues arose. Id., ¶¶ 16-17.



Defendant further alleges that he asked the Plaintiff in 2014 to provide the date, time and location of any alleged order from the Defendant for Plaintiff not to file a grievance, but that Plaintiff was unable to provide this information. Id., ¶ 18.

Defendant alleges that he eventually terminated Plaintiff's employment due to Plaintiff's false accusations that the Defendant had ordered him not to file grievances, his insubordinate and divisive statements and conduct as a senior staff member directed to subordinate staff and to third parties outside of the office, and because of Plaintiff's inability to control his animosity towards others lawyers and to act constructively for the welfare of his clients in coordination with his employer, the Ninth Circuit Public Defender. Defendant further alleges that although Plaintiff complained publically and in the press that he was terminated by the Defendant because he had cancer, Plaintiff alleges in his Amended Complaint that he was terminated because he complained about the Ninth Circuit Solicitor's Office. Id., ¶ ¶ 19-20.

In his First Cause of Action (Counterclaim) against the Plaintiff for defamation and slander per se, Defendant alleges that Plaintiff published himself or through his agents verbal and written false and defamatory statements about the Defendant to the press, members of the Defendant's staff, local attorneys, members of the South Carolina Criminal Defense Lawyers Association, and the public; that these false statements exceeded any intra-corporate privilege that may have existed; that they were false and Plaintiff knew they were false and/or had reckless disregard for their falsity; that these false statements inferred that the Defendant was unethical, was not loyal to his clients, did not care if the Solicitor's Office acted in a manner that might harm clients, and that he was hiding or covering for the Solicitor's actions; that these statements inferred wrongdoing and that the Defendant was unfit for his profession and constituted slander per se; that



Plaintiff's false statements were made and his actions were taken with actual malice and exceeded any qualified privilege that may have existed; and that the publication and republication of these false statements by the Plaintiff has caused the Defendant to suffer general damages, and damages to his personal and professional reputation.  Id., at ¶ ¶ 23-30.  See generally, Defendant's Second Amended Answer and Counterclaim.

**Discussion**

Plaintiff argues in his motion that the Defendant's counterclaim for defamation and slander per se should be dismissed pursuant to Rule 12, Fed.R.Civ.P., because Plaintiff has failed to set forth sufficient factual allegations to state a claim upon which relief can be granted.  When considering a Rule 12 motion to dismiss, the Court is required to accept the allegations in the pleading as true, and draw all reasonable factual inferences in favor of the party opposing the motion.  The motion can be granted only if the party opposing the motion has failed to set forth sufficient factual matters to state a plausible claim for relief "on its face".  Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009).  "[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the [claim] alleges sufficient facts which, if true, would permit a reasonable fact finder to find [the party seeking dismissal of the claim] liable." Vogt v. Greenmarine Holding, LLC, 318 F.Supp. 2d 136, 144 (S.D.N.Y. 2004).  Pursuant to this standard, and for the reasons set forth hereinbelow, Plaintiff's motion should be denied at this time.

Defamatory communications can take two forms: libel and slander.  Slander is a spoken defamation, while libel is a written defamation or one accomplished by actions or conduct.



Swinton Creek Nursery v. Edisto Farm Credit, 514 S.E.2d 126 (S.C. 1999).[4]  In South Carolina, the elements for a defamation claim are: 1) a false and defamatory statement concerning another; 2) an unprivileged publication to a third party; 3) fault on the part of the publisher; and 4) either actionability of the statement irrespective of special harm or the existence of special harm caused by the publication.  Murray v. Holnam, Inc., 542 S.E.2d 743, 748 (S.C.Ct.App. 2001).  Further, a statement may be actionable per se where it is both false and defamatory and suggests 1) the commission of a crime of moral turpitude, 2) contraction of a loathsome disease, 3) adultery, 4) unchastity, or 5) unfitness in one's business or profession.  Holtzscheither v. Thomson Newspapers, Inc., 506 S.E.2d 497, 508-509 (S.C. 1998).

Accepting the allegations in Defendant's counterclaim as true, and drawing all reasonable factual inferences in favor of the Defendant, he has alleged that the Plaintiff made false and defamatory statements about him to third parties by falsely stating to the press and to professional colleagues both inside and outside of the Public Defender's office that he had ordered the Plaintiff not to file a grievance against the Ninth Circuit Solicitor's Office when he [Defendant] in fact had specifically reminded the Plaintiff and other attorneys in his office of their ethical right to file grievances whenever ethics issues arose.  Additionally, unlike as was the case with Defendant's initial counterclaim (which resulted in the Court's previous order to make more definite and certain), Defendant has in his Second Amended Counterclaim specifically set forth individuals and entities to whom these purported defamatory statements were made.  See generally, Second

---

[4]Defendant's allegations encompass both forms of defamatory communications.



10

Amended Answer and Counterclaim, ¶ ¶ 2-4, 8-17.[5]

Defendant's allegation that Plaintiff made these false statements about him to other attorneys, in particular attorneys outside of the Public Defenders Office, as well as to a newspaper reporter, is sufficient to satisfy the requirement of an unprivileged publication to a third party. Although Plaintiff argues that any such statements would be entitled to a qualified privilege as having been made to individuals who share a common interest or common duty, under the context of this case this argument is without merit. Cf. Legette v. Nucor Corp., No. 12-1020, 2012 WL 3029650 at * 3 (D.S.C. July 29, 2012) ["Even assuming a qualified privilege applies to all of the alleged statements, Plaintiff has alleged that the statements were made with reckless disregard and malice".]; see also Wolman v. Tose, 467 F.2d 29, 33, n. 5 (4th Cir. 1972)["Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the Court to infer that all of the required elements of the cause of action are present."]. Further, Plaintiff's statements to these third parties (as alleged by the Defendant) call into question the Defendant's fitness in his business or profession, as it alleges a violation by the Defendant of the code of conduct for licensed attorneys in South Carolina. Cf. Matter of Foster, 478 S.E.2d 840, 841 (S.C. 1996) [Supreme Court can suspend law license for violations of rules of professional conduct];

---

[5]As with his earlier counterclaim, Defendant also re-alleges his claim that Plaintiff complained publically and in the press that he was terminated by the Defendant because he had cancer. Plaintiff's Amended Answer and Counterclaim, ¶ ¶ 19-20. However, as was the case with Defendant's original counterclaim, Defendant has again failed to set forth anywhere in the allegations of his Second Amended counterclaim to whom any such allegedly defamatory statements were made. Therefore, to the extent this allegation is part of the Defendant's counterclaim for defamation and slander per se, it is subject to dismissal for the reasons set forth in the Court's Order of September 12, 2016. Dickson v. Microsoft Corp., 309 F.3d 193, 213 (4th Cir. 2002) [Plaintiff has burden of alleging fact sufficient to state all the elements of the claim]; see Murray, 542 S.E.2d at 748 [requiring publication of alleged defamatory comments to third parties].



Matter of Hawkins, 463 S.E.2d 92 (S.C. 1995) [Same]; see also In Re Sullivan, 679 S.E.2d 525 (S.C. 2009) [same]. As such, Defendant's allegations are sufficient to set forth a "plausible" claim for defamation per se. Holtzscheither, 506 S.E.2d at 508-509 [Statement may be actionable per se where it is both false and defamatory and suggests unfitness in one's business or profession]; Johns v. Amtrust Under writers, Inc., 996 F.Supp.2d 413, 418-419 (D.S.C. 2014).

Plaintiff also argues that Defendant's claim should be dismissed because the Defendant is a public figure, that he must therefore plead and prove that any alleged defamation of him was done with actual malice, and that Defendant's allegations fail to meet this standard. See New York Times Co. v. Sullivan, 376 U.S. 254, 270 (1964); cf. Parrish v. Gannett River States pub. Corp., No. 93-238, 1994 WL 159533 at * 3 (S.D.Miss. Feb. 9, 1994) [Discussing public defenders as public figures]; see also S.C.Code 17-3-510 (2007). Here, however, the Defendant has specifically alleged that the Plaintiff had reckless disregard for the falsity of his statements and that they were made with actual malice. Second Amended Complaint and Counterclaim, at ¶¶ 25, 27-28; see Flemming v. Rose, 567 S.E.2d 587, 860 (S.C. 2002) [Actual malice means the publisher of the statement had knowledge the statement was false or acted with reckless disregard as to whether or not it was false]. Defendant's allegations are therefore sufficient to state a claim for malice. See Elder v. Gaffney Ledger, 533 S.E.2d 899, 902 (S.C. 2000) [Actual malice can be found where the publisher in fact entertained serious doubts as to the truth of his publication and/or had a high degree of awareness of probable falsity]; see also Slade v. Hampton Roads Regional Jail, 407 F.3d 243, 248 (4th Cir. 2005)["Courts should not dismiss a complaint for failure to state a claim unless 'after accepting all well-pleaded allegations in the Plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief'"], citing Edwards v. City



of Goldsboro, 178 F.3d 231, 244 (4th Cir. 1999); Vogt, 318 F.Supp.2d at 144 ["[O]n a motion to dismiss, the Court does not weigh the strength of the evidence, and simply considers whether the [claim] alleges sufficient facts which, if true, would permit a reasonable fact finder to find [the party seeking dismissal of the claim] liable."].

Finally, Plaintiff argues that Defendant's defamation/slander claim is barred by the applicable statute of limitations. In South Carolina, the statute of limitations for libel and slander claims is two years. See S.C.Code Ann. § 15-3-550. Plaintiff argues that the only date cited by the Defendant in his counterclaim is where he alleges that Plaintiff or his agents contacted reporter Phillip Bantz on or around April 2014; see Amended Answer and Counterclaim, ¶ 11; and that since Defendant did not file his counterclaim until April 14, 2016 (see Court Docket No. 22), Defendant has failed to allege with sufficient specificity that any reported defamatory statements were made within the applicable two year limitations period. However, in this Circuit the statute of limitations for compulsory counterclaims begins to run at the time of the filing of the initial complaint. See Kirkpatrick v. Lenoir County Bd. of Educ., 216 F.3d 380, 388 (4th Cir. 2000) ["In this Circuit a compulsory counterclaim relates back to the time of the filing of plaintiff's complaint"], citing Burlington Indus. v. Milliken & Co., 690 F.2d 380, 389 (4th Cir. 1982). Therefore, if the Defendant's counterclaim is compulsory, the limitations period for Defendant's claims would be November 2, 2013 (two years prior to the filing date of the Complaint in this action of November 2, 2015), not April 2014. See Court Docket No. 1.

When determining if a counterclaim is mandatory or permissive, the Court looks to 1) whether the issues of fact and law raised in the claim and counterclaim are largely the same, 2) whether res judicata would bar a subsequent suit on the party's counterclaim absent the compulsory



counterclaim rule, 3) whether substantially the same evidence supports or refutes the claim as well as the counterclaim, and 4) whether there is any logical relationship between the claim and the counterclaim. Painter v. Harvey, 863 F.2d 329, 331 (4th Cir. 1988). Further, although the Court uses these factors as guidelines, it is not necessary that each question be answered in the affirmative in order for a counterclaim to be deemed mandatory. Id. Here, the Defendant has asserted a counterclaim that arises out of the same facts at issue in the initial complaint, substantially the same evidence will support or refute both claims, and there is a logical relationship between the Plaintiff's claim and the Defendant's counterclaim. As such, for purposes of Plaintiff's Rule 12 motion to dismiss, there are sufficient allegations to support a finding that Defendant's claim relates back to the date of Plaintiff's filing of the Complaint for the counterclaim to be considered compulsory, at least at this early stage of the proceedings. Painter, 863 F.2d at 331; see also Wolman, 467 F.2d at 33, n. 5 ["Under the liberal rules of federal pleading, a complaint should survive a motion to dismiss if it sets out facts sufficient for the Court to infer that all of the required elements of the cause of action are present."].

Dating from November 2, 2013, the allegations of the Defendant's counterclaim are sufficient to infer the existence of purportedly defamatory comments by the Plaintiff during the applicable time period. Austen v. Catterton Partners V, LP, 709 F.Supp.2d 172 (D.Conn. 2010) [Iqbal's plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]]; see also Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) [A complaint attacked by a Rule 12 motion to dismiss does not need detailed factual allegations; rather, the factual allegations must only be enough to raise a right to relief above the speculative level].



Therefore, Plaintiff is not entitled to dismissal of Defendant's counterclaim on statute of limitations grounds.

## **Conclusion**

Based on the foregoing, to the extent Defendant's counterclaim includes a claim for defamation based on Plaintiff publically claiming the Defendant terminated him because he has cancer, that claim should be dismissed. <u>See</u>, n. 5, <u>supra</u>. In all other respects, it is recommended that the Plaintiff's motion to dismiss Defendant's Counterclaim for defamation and slander <u>per se</u> be **denied**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

November 28, 2016
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> Robin L. Blume, Clerk
> United States District Court
> Post Office Box 835
> Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

