UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Beattie I. Butler, | ) | Civil Action No. 2:15-4455-BHH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **OPINION AND ORDER** |
| D. Ashley Pennington, in his individual | ) | |
| and official capacities, and Charleston | ) | |
| County, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

This matter is before the Court for review of the Report and Recommendation entered by United States Magistrate Judge Bristow Marchant on November 15, 2018 ("Report"). (ECF No. 151.) In accordance with 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02 for the District of South Carolina, this case was referred to Magistrate Judge Marchant for pretrial handling. In his Report, the Magistrate Judge recommends that Defendant D. Ashley Pennington's ("Defendant" or "Pennington") motion for summary judgment on his counterclaim for defamation (ECF No. 110), made in his individual capacity, be denied, and that Defendants Pennington, in his official capacity, and Charleston County's (collectively "Defendants") motion for summary judgment on Plaintiff's claims (ECF No. 111) be granted in part and denied in part. (*See* ECF No. 151 at 51.) The Report sets forth in detail the relevant facts and standards of law, and the Court incorporates them here, *summarizing* below only in relevant part.[1]

_____

[1] As always, the Court says only what is necessary to address the parties' objections against the already meaningful backdrop of a thorough Report and Recommendation by the Magistrate Judge; exhaustive recitation of law and fact exists there.

## **BACKGROUND**

This case arises out of a series of disputes, over a span of years, between Plaintiff Beattie Butler ("Plaintiff" or "Butler"), who served as an Assistant Public Defender ("APD") for Charleston County, and Defendant Pennington, who was at all times relevant to the amended complaint the Public Defender for the Ninth Circuit and Plaintiff's boss. Plaintiff joined the Public Defender's Office ("PD's Office") in 2003 and over time became the most experienced litigator, eventually being designated "director of litigation" and later "chief litigator." In essence, Plaintiff alleges that, beginning in 2007, he possessed knowledge of what he considered to be serious prosecutorial misconduct perpetrated by attorneys from the Ninth Circuit Solicitor's Office, but that Pennington prevented him from reporting the misconduct to the Office of Disciplinary Counsel ("ODC"). Plaintiff alleges that Defendant, at various times and in various ways, ordered him not to speak or convey in any manner to others comments that were critical of the Solicitor (Scarlett Wilson) or her office, especially regarding their ethics or honesty, without first obtaining Defendant's permission.

Nevertheless, Plaintiff consulted with members of the Board of Directors of the South Carolina Association of Criminal Defense Lawyers ("SCACDL") and assisted them in drafting a grievance against Solicitor Wilson, which action was contrary to Defendant's wishes and advice to the Board. Plaintiff subsequently began to question the ethical propriety of his own compliance with Defendant's previous orders not to disclose the alleged prosecutorial misconduct, and sought legal counsel. Ultimately, Plaintiff's ethics counsel sent a letter to Defendant challenging Defendant's directives about reporting/non-reporting ethical misconduct, and informing Defendant of Plaintiff's intent to "self-report"

to the ODC his failure to disclose knowledge of misconduct as a result of those directives. Plaintiff later met with ODC staff to satisfy what he believed to be his reporting obligation.

In April 2014, Plaintiff was diagnosed with cancer and immediately began an intensive treatment regimen including chemotherapy and radiation. Plaintiff alleges that although he requested FMLA leave due to his treatment and condition, he never received official notification from Charleston County's Human Resource Office or any other county office relating to this request. During the period that Plaintiff was undergoing this cancer treatment, his dispute with Defendant about reporting ethical breaches by the Solicitor's Office continued. Plaintiff alleges that, while he was compromised by his disease and treatment, Defendant sent him a list of detailed questions seeking information related to the Solicitor's Office's past alleged ethics violations and regarding the Defendant's prior orders to not file grievances about said violations. Plaintiff met with Defendant on September 29, 2014 to discuss these matters, at which time Defendant requested further written documentation of Plaintiff's medical condition and prognosis. On October 14, 2014, Defendant terminated Plaintiff's employment with the PD's Office.

Plaintiff asserts the following claims in his amended complaint: First Amendment retaliation, prior restraint, and protected speech under 42 U.S.C. § 1983 (First Cause of Action); employment discrimination in violation of the Americans with Disabilities Act ("ADA") (Second Cause of Action); Family and Medical Leave Act ("FMLA")—interference with statutory rights (Third Cause of Action); defamation—libel and slander *per se* (Fourth Cause of Action); breach of implied contract (Fifth Cause of Action); denial of due process under § 1983 (Sixth Cause of Action); and breach of contract—intended third-party

beneficiary (Seventh Cause of Action).[2] (ECF No. 20 ¶¶ 41–174.)

Defendant Pennington, in his individual capacity, asserts a counterclaim for defamation and slander *per se*. (Second Am. Answer, ECF No. 41 at 23–28.) In the counterclaim, Defendant alleges that Plaintiff, after having been specifically instructed not to speak on behalf of the PD's Office without first receiving clearance from Defendant, responded to press inquiries from the Post and Courier regarding alleged misconduct by the Solicitor's Office in direct violation of Defendant's instructions. Defendant further alleges that Plaintiff's constant criticism of the Solicitor's Office reflected poorly on the PD's Office, fostered division within that office, and was generally counterproductive. According to Defendant, Plaintiff held continuing personal animosity against Solicitor Wilson for having filed a professional grievance against Plaintiff several years earlier.

Defendant avers that Plaintiff told numerous attorneys the falsehood that Defendant ordered Plaintiff not to file a grievance against the Solicitor, thereby inferring that Defendant was unethically "covering for" or protecting the Solicitor at the expense of the best interests of the PD's clients and the community. Defendant identifies nine individuals to whom Plaintiff made this allegedly false statement.

Moreover, Defendant asserts that Plaintiff repeated this false statement to South Carolina Lawyer's Weekly reporter Phillip Bantz ("Bantz") in April 2014, and that the false statement was published statewide by the Lawyer's Weekly to members of the South Carolina Bar and the broader community. Defendant contends that the statement that he had ordered Plaintiff not to file a grievance against the Solicitor, and the repetition of the statement, was both false and published by Plaintiff with the intent of showing Defendant

---

[2] Plaintiff has abandoned both his Sixth and Seventh Causes of Action. (*See* ECF No. 151 at 15 n.12.) Accordingly, those claims will not be addressed in this order.

was unethical and unfit for his profession. Defendant alleges that when he asked Plaintiff in September 2014 to provide the date, time, and location of any such alleged orders, Plaintiff was unable to provide the information.

Finally, Defendant alleges that he terminated Plaintiff's employment due to Plaintiff's false accusations against Defendant, Plaintiff's insubordinate and divisive statements and conduct as a senior staff member directed to subordinate staff and third parties, and Plaintiff's inability to control his animosity toward other lawyers and act constructively for the welfare of his clients in coordination with his employer, the PD's Office.

On April 13, 2018, Defendants filed a motion for summary judgment on Plaintiff's claims, and Pennington, in his individual capacity, filed a motion for summary judgment on his counterclaim. (ECF Nos. 110 & 111.) The motions were fully briefed. (ECF Nos. 115, 116, 121, 122, 124, 127.) The Magistrate Judge held a hearing on, *inter alia*, the motions for summary judgment. (ECF Nos. 131 & 132.) The case was reassigned to the undersigned on September 10, 2018. (ECF No. 137.) On November 15, 2018, the Magistrate Judge issued his Report. (ECF No. 151.) The parties filed timely objections and replies. (ECF No. 154, 155, 156, 157.) The matter is ripe for consideration and the Court now makes the following ruling.

## STANDARD OF REVIEW

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *See Mathews v. Weber*, 423 U.S. 261 (1976). The Court is charged with making a *de novo* determination of any portion of the Report of the

Magistrate Judge to which a specific objection is made. The Court may accept, reject, or modify, in whole or in part, the recommendation made by the Magistrate Judge or recommit the matter to the Magistrate Judge with instructions. *See* 28 U.S.C. § 636(b). In the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## DISCUSSION

### A. Defendant Pennington's Defamation Counterclaim

The Magistrate Judge concluded that Defendant Pennington's motion for summary judgment on his defamation counterclaim should be denied. The Report notes that Defendant offered evidence of comments made by Plaintiff which are arguably actionable under a defamation theory, including that Defendant was unable to perform his job, that no one would want him representing them, that his legal skills were lacking, that he was incompetent and a poor administrator, that he was unable to perform his job, that he was unwilling as the Public Defender "to really fight with the Solicitor's office," and that he would not permit Plaintiff to file grievances. (ECF No. 151 at 12 (citing deposition excerpts).) However, the Magistrate Judge found that there is a clear factual dispute between Plaintiff and Defendant about whether Defendant ordered Plaintiff not to file a grievance, which is a question of fact for the jury. (*Id.* at 13.) Moreover, the Magistrate Judge concluded that genuine issues of material fact remain with respect to whether the statements at issue were mere opinion and did not convey defamatory meaning, or were indeed defamatory in nature, and/or were made with malice and truly damaged

Defendant's reputation. (*Id.* at 14.) Accordingly, the Magistrate Judge reasoned that the facts and evidence presented do not establish defamation as a matter of law, and Defendant is not entitled to summary judgment on his counterclaim. (*Id.*)

Though he agrees with the Magistrate Judge's conclusion that Defendant is not entitled to summary judgment on the defamation counterclaim, Plaintiff objects "on the basis of lack of federal subject matter jurisdiction" to consideration of "certain statements referenced in the [Report's] discussion of Defendant's counterclaim." (ECF No. 155 at 7.) The Court finds that the factual questions surrounding the statements relevant to Defendant's counterclaim fall within the Court's supplemental jurisdiction. The objection is without merit and is overruled.

The Court agrees with the sound reasoning and conclusions of the Magistrate Judge pertaining to the defamation counterclaim, and finds no error therein. Accordingly, the motion for summary judgment on the counterclaim is denied.

### B. Plaintiff's First Amendment Section 1983 Claim

With respect to Plaintiff's § 1983 claim alleging violation of his rights under the First Amendment to the U.S. Constitution (First Cause of Action), the Magistrate Judge first concluded that Defendant Pennington, in his official capacity, is entitled to dismissal as a party defendant to Plaintiff's First Amendment claim because he enjoys Eleventh Amendment immunity from any suit for damages under § 1983. (ECF No. 151 at 15–17.) Plaintiff objects to this conclusion in part, arguing that, to the extent his First Amendment claim seeks injunctive relief—namely, reinstatement for a retaliatory firing—Eleventh Amendment immunity does not apply, and Defendant Pennington, in his official capacity, should not be fully dismissed as a party defendant to the First Cause of Action. (ECF No.

155 at 3–4.) Plaintiff is correct and the objection is sustained. The U.S. Supreme Court has stated, "[A] state official *in his or her official capacity, when sued for injunctive relief*, would be a person under § 1983 because official-capacity actions for prospective relief are not treated as actions against the State." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 n.10 (1989) (emphasis added) (citations and quotation marks omitted). Accordingly, Defendants' motion for summary judgment is granted insofar as it seeks dismissal of Defendant Pennington, in his official capacity, from the First Cause of Action for damages, but denied insofar as it seeks dismissal of Defendant Pennington, in his official capacity, from the First Cause of Action for injunctive relief. (*See* ECF No. 20 ¶ 57 (seeking reinstatement and other injunctive relief as remedfies for alleged First Amendment violations).)

The Magistrate Judge next found that Plaintiff has presented no evidence of any unconstitutional policy adopted and promulgated by Defendant Charleston County or its officers—in this case Pennington—so as to subject Charleston County to liability on the First Amendment claim. (ECF No. 151 at 17–18.) The Magistrate Judge stated, "Plaintiff has failed to point to any ordinance or policy of Charleston County that Pennington would have been following by engaging in the improper conduct alleged, and the county may only be liable for damages if the execution of a policy or custom *of the county itself* is what resulted in the alleged injury." (*Id.* at 18 (emphasis added) (citing *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978); *Milligan v. City of Newport News*, 743 F.2d 227, 229 (4th Cir. 1984); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination*, 507 U.S. 163, 166 (1993)).) The Report further notes that, as the Ninth Circuit Public Defender, Pennington is considered to be an employee of the State of South Carolina, not Charleston County. (*Id.*) Thus,

the Magistrate Judge concluded that Defendant Charleston County is entitled to dismissal as a party defendant to Plaintiff's First Cause of Action. (*Id.* at 19.)

Plaintiff objects to this conclusion, arguing that Defendant Pennington is the "final policy maker" with respect to hiring, firing, and directing the duties of PD's Office employees, who are all employees of Charleston County. (ECF No. 155 at 5.) He further asserts that, irrespective of Pennington being "labelled a 'state employee,'" Pennington is acting for, and on behalf of, Charleston County when making hiring and firing decisions regarding PD's Office personnel. (*Id.* at 6.) However, this objection misconstrues both what it means to be a "final policy maker" and the nature of the "policy" being challenged in the First Amendment claim. "'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government." *Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir. 1987) (citations omitted). Pennington's decision to terminate Plaintiff was operational and discretionary in nature, and Plaintiff has not shown that Pennington was a "final policy maker" in this regard. Moreover, the "policy" being challenged in the First Amendment claim is Pennington's alleged order to Plaintiff and other PD's Office personnel not to report ethical misconduct without first receiving his approval. Plaintiff's firing is incidental to this "policy," though in Plaintiff's view, causally related. Plaintiff has not offered any evidence to show that Pennington was acting on behalf of Charleston County when he allegedly imposed such a policy. Accordingly, the objection is overruled and Defendants' motion for summary judgment is granted to the extent it seeks dismissal of Charleston County as a party defendant to the First Cause of Action.

Regarding Plaintiff's § 1983 claims against Defendant Pennington in his individual capacity, the Magistrate Judge determined that, when considered in the light most favorable to

Plaintiff, the record evidence reflects that Plaintiff sought to engage in speech designed to bring public attention to what he believed to be serious prosecutorial misconduct by the Ninth Circuit Solicitor, and that Defendant attempted to prevent him from engaging in that speech by way of his role as Plaintff's boss. (ECF No. 151 at 19–23.) Thus, the Magistrate Judge found that Pennington is not entitled to summary judgment on Plaintiff's prior restraint claim. (*Id.* at 23.)

Defendants object to these findings, arguing that Pennington did not restrain Plaintiff's speech in violation of the First Amendment. (ECF No. 154 at 3.) Defendants broadly argue that: (1) Plaintiff has not presented evidence that his speech was "citizen speech" related to "matters of concern to the public"; (2) Plaintiff has not presented adequate evidence that Pennington restrained his speech in an unlawful manner; and (3) Pennington's interest in managing and operating his office outweighed Plaintiff's interest in engaging in the allegedly protected speech. (*Id.* at 3–6.) The Court disagrees, and finds that: (1) there is sufficient evidence in the record to conclude that the speech at issue was not purely personal, but related to a matter of significant public concern— namely, alleged ethical misconduct by the local prosecutor's office in a serious criminal case(s); (2) there is adequate evidence to create a jury issue as to whether Pennington restrained Plaintiff's speech unlawfully—by ordering Plaintiff not to disclose alleged ethical misconduct of which he had knowledge and regarding which he maintained a perceived duty to report; and (3) the question whether Pennington's legitimate managerial interest outweighed Plaintiff's First Amendment interests presents a genuine dispute of material fact for resolution by a jury. Defendants have not shown any error in the Magistrate Judge's sound reasoning and conclusions on these matters, and the objection is overruled.

The Magistrate Judge further concluded that Plaintiff's First Amendment retaliation claim is not subject to summary judgment because there is a sufficient question of fact as to whether the

speech at issue is protected, as well as a genuine dispute regarding whether Plaintiff's having engaged in protected speech was the motivating cause for his discharge. (*Id.* at 23–24.) Specifically, the Magistrate Judge found that the evidence, considered in the light most favorable to Plaintiff, demonstrates that Pennington's decision to terminate Plaintiff's employment arose from Plaintiff's public comments about the Solicitor's Office, including with the SCACDL Board of Directors and to the press. (*Id.* at 24.) Accordingly, the Magistrate Judge recommended that Defendants' motion for summary judgment on Plaintiff's § 1983 retaliatory discharge claim be denied. (*Id.*)

Defendants object, arguing that the Report allows Plaintiff to create and rely upon a "sham issue of fact" in order to avoid the entry of summary judgment on the retaliation claim. (ECF No. 154 at 6.) Here Defendants aver that Plaintiff set up, and swore to, contradictory theories, where in one claim of his verified amended complaint he asserts that his *disability* was the "but for" cause of his termination (employment discrimination based on disability in violation of the ADA, Second Cause of Action), and in another claim he contends that "speaking out" against prosecutorial misconduct and violating the unconstitutional restraints Pennington imposed him was the but for cause (First Amendment retaliation theory, First Cause of Action). (*Id.* at 6–8.) Defendants assert that by failing to acknowledge or examine this inconsistency in Plaintiff's sworn statements, including his charge of discrimination to the EEOC, verified complaint, verified amended complaint, and deposition testimony, the Magistrate Judge erroneously allowed Plaintiff to manufacture an issue of fact, which the Magistrate Judge then relied upon in recommending that summary judgment be denied. (*Id.* at 8.) Defendants state that the Report, "in this respect, is wrong, inconsistent with well-established law and in error." (*Id.*)

The Court disagrees that the Magistrate Judge relied upon a "sham issue of fact," and

overrules the objection. Paragraph 52 of the verified amended complaint states: "Defendant Pennington ultimately terminated Plaintiff's employment because of his criticism of Solicitor Wilson in violation of Defendant Pennington's restrictions on Plaintiff's speech as described herein and because of Plaintiff's involvement in grievances filed against Solicitor Wilson and her office." (ECF No. 20 at 16.) This is a clear statement of causation, wherein Plaintiff represents that engaging in speech protected by the First Amendment directly led to his firing. (*See also* Opp'n to Mot. Summ. J., ECF No. 115 at 22–25 (arguing that Plaintiff was fired for exercising and attempting to exercise protected speech).) With respect to Plaintiff's ADA claim, paragraph 79 of the verified amended complaint states: "Defendant Pennington had knowledge of Plaintiff's disability and intentionally and willfully discriminated against Plaintiff based on that disability in direct violation of the ADA by terminating Plaintiff's employment on October 14, 2014, in the midst of his on-going course of chemotherapy treatments." (*Id.* at 22.) Paragraph 80 states:

> Upon information and belief, Defendant Pennington deliberately attempted to take advantage of Plaintiff's weakened physical condition from the cancer treatments to inflict greater harm on Plaintiff than would have been possible if Plaintiff were healthy. Upon information and belief, Defendant Pennington also used the timing of termination in the midst of Plaintiff's health crisis in an attempt to force Plaintiff to accept a severance payment of approximately two weeks' pay, plus three months of continuation of health benefits under COBRA in exchange for Plaintiff's waiving any legal claims arising out of his employment or termination. Plaintiff refused to accept the severance proposal.

(*Id.*) Plaintiff's charge of discrimination to the EEOC alleges: "My termination of October 14, 2014 was strategically timed during a specific course of my treatment that was especially debilitating and physically demanding. But for my illness, I would not have been terminated at that time. But for my condition I would not have been let go when and [sic] the manner I was treated, due to my illness." (ECF No. 111-15 at 2.) Plaintiff argues that these averments, taken together, represent a "novel claim under ADA law" that

Pennington used the *timing* of a particularly difficult stage of his illness and treatment to take advantage of his cancer disability when effecting his termination. (*See* Pl.'s Reply to Defs.' Objections, ECF No. 157 at 10–14 & n.12.) Plaintiff states, "[I]t is not now, nor has it ever been Plaintiff's position that Pennington fired him 'because he was disabled by cancer.'" (*Id.* at 12.) Without expressing any opinion on the viability of Plaintiff's "novel" disability discrimination theory, the undersigned finds that it is not fundamentally at odds with Plaintiff's core assertion that he was fired for making ethical allegations against personnel from the Solicitor's Office. Finding no error in the Magistrate Judge's conclusions and recommendation regarding the First Amendment retaliation claim, the Court denies summary judgment as to that claim within the First Cause of Action.

As to qualified immunity, the Magistrate Judge noted that he had already determined that a genuine issue of material fact remains regarding whether Pennington violated Plaintiff's First Amendment rights by preventing Plaintiff from discussing or commenting on a matter of public concern. (*Id.* at 24–25.) The Magistrate Judge next concluded that it was clearly established during the relevant time period that even a public employee's First Amendment rights could be violated where the countervailing government interest motivating the restraint was insufficient to outweigh the employee's right to address an issue of public concern. (*See id.* at 25–26.) Therefore, the Magistrate Judge reasoned that Defendant Pennington is not entitled to dismissal of Plaintiff's First Amendment claims based on qualified immunity because there is a genuine issue of fact as to whether Pennington's conduct violated a clearly established constitutional right of which a reasonable person would have known. (*Id.* at 26 (citing *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994) (holding that qualified immunity shields a government official from liability only if the official's conduct did not violate clearly established statutory or constitutional rights of which a

reasonable person would have known)).)

Defendants object to these conclusions, arguing that even if Pennington did restrain Plaintiff's speech in violation of the First Amendment, Pennington, in his individual capacity, is entitled to qualified immunity because an unlawful restraint was not established "beyond debate." (ECF No. 154 at 3.) Defendants assert that the right at issue was not clearly established, and that the Magistrate Judge relied upon inapplicable precedent, precedent post-dating the events at issue, and precedent from jurisdictions other than the U.S. Supreme Court or the Fourth Circuit in finding that summary judgment was not appropriate. (*Id.* at 8–11.) Defendants further contend that when considering the right that Butler alleges Pennington violated, the Court must not define the right as a broad general proposition, but in light of the specific context of the case. (*Id.* at 11 (citing *Mullinex v. Luna,* 136 S. Ct. 305, 308 (2015); *McKinney v. Richland Cty. Sheriff's Dep't*, 431 F.3d 415, 417 (4th Cir. 2005); *Wiley v. Doory*, 14 F.3d 993, 995 (4th Cir. 1994)).)

The Fourth Circuit has explained the legal principles governing the First Amendment rights of public employees in the following manner:

> It is well settled that citizens do not relinquish all of their First Amendment rights by virtue of accepting public employment. *See United States v. National Treasury Employees Union*, 513 U.S. 454, 465, 115 S. Ct. 1003, 130 L.Ed.2d 964 (1995) [hereinafter *NTEU*]; *Connick v. Myers*, 461 U.S. 138, 142, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563, 568, 88 S. Ct. 1731, 20 L.Ed.2d 811 (1968). Nevertheless, the state, as an employer, undoubtedly possesses greater authority to restrict the speech of its employees than it has as sovereign to restrict the speech of the citizenry as a whole. *See Waters v. Churchill*, 511 U.S. 661, 671, 114 S. Ct. 1878, 128 L.Ed.2d 686 (1994) (plurality opinion) (recognizing that "the government as employer . . . has far broader powers than does the government as sovereign"); *Pickering*, 391 U.S. at 568, 88 S. Ct. 1731 (explaining that "the State has interests as an employer in regulating the speech of its employees that differ significantly from those it possesses in connection with regulation of the speech of the citizenry in general"). A determination of whether a restriction imposed on a public employee's speech violates the First Amendment requires "'a balance between the interests of the [employee], as a citizen, in commenting upon matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its

employees.'" *Connick*, 461 U.S. at 142, 103 S. Ct. 1684 (alteration in original) (quoting *Pickering*, 391 U.S. at 568, 88 S. Ct. 1731). This balancing involves an inquiry first into whether the speech at issue was that of a private citizen speaking on a matter of public concern. If so, the court must next consider whether the employee's interest in First Amendment expression outweighs the public employer's interest in what the employer has determined to be the appropriate operation of the workplace. *See Pickering*, 391 U.S. at 568, 88 S. Ct. 1731.

The threshold inquiry thus is whether the Act regulates speech by state employees in their capacity as citizens upon matters of public concern. If a public employee's speech made in his capacity as a private citizen does not touch upon a matter of public concern, the state, as employer, may regulate it without infringing any First Amendment protection. *See Connick*, 461 U.S. at 146, 103 S. Ct. 1684 (explaining that if a plaintiff's speech "cannot be fairly characterized as constituting speech on a matter of public concern, it is unnecessary . . . to scrutinize the reasons for [the] discharge"); *Holland v. Rimmer*, 25 F.3d 1251, 1254–55 & n. 11 (4th Cir. 1994). Whether speech is that of a private citizen addressing a matter of public concern is a question of law for the court and, accordingly, we review the matter de novo. *See Connick*, 461 U.S. at 148 n. 7, 103 S. Ct. 1684; *Hall v. Marion Sch. Dist. Number 2*, 31 F.3d 183, 192 (4th Cir. 1994); *Holland*, 25 F.3d at 1255.

*Urofsky v. Gilmore*, 216 F.3d 401, 406 (4th Cir. 2000) (modifications in original). "When applying this Pickering balancing test, the Supreme Court has suggested that 'the Government's burden is greater' in cases like that at hand, involving 'potential speech before it happens' than in cases involving 'an adverse action taken in response to actual speech.'" *Mansoor v. Trank*, 319 F.3d 133, 137 (4th Cir. 2003). Viewing the facts in the light most favorable to Plaintiff, the Court finds that Butler's proposed speech—namely, exposing alleged prosecutorial misconduct—was citizen speech on a matter of public concern, and that Butler's interest in communicating that speech was not outweighed by Pennington's interest in efficient operation of the PD's Office.

The Fourth Circuit has stated, "'We do not require a case directly on point' in order to conclude that the law was clearly established, 'but existing precedent must have placed the statutory or constitutional question beyond debate.'" *Liverman v. City of Petersburg*, 844 F.3d 400, 411 (4th Cir. 2016) (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 741 (2011)). "[I]t was clearly established in the law of this Circuit in September 2009 that an employee's speech about serious

governmental misconduct, and certainly not least of all serious misconduct in a law enforcement agency . . ., is protected." *Durham v. Jones*, 737 F.3d 291, 303–04 (4th Cir. 2013) (citing *Andrew v. Clark*, 561 F.3d 261, 269 (4th Cir. 2009)). The Court finds that, at times relevant to the alleged events, it was clearly established that Butler maintained a First Amendment right to report alleged prosecutorial misconduct by the Ninth Circuit Solicitor's Office. Accordingly, Defendants' objections are overruled, the Magistrate Judge's reasoning and conclusions are adopted, and the Court holds that Defendant Pennington, in his individual capacity, is not entitled to qualified immunity.

### C. Americans with Disabilities Act Claim

With regard to Plaintiff's Second Cause of Action, the Magistrate Judge found that: (1) Plaintiff cannot bring an ADA claim against Defendant Pennington in his official capacity under Title I of the ADA—specifically, 42 U.S.C. §§ 12111(8) and 12112(a)—for damages; (2) Pennington in his official capacity is entitled to dismissal insofar as Plaintiff asserts a claim under Title II of the ADA—specifically, 42 U.S.C. §§ 12102(2) and 12132; (3) Pennington in his official capacity is entitled to dismissal as a party defendant to the Second Cause of Action; and (4) Plaintiff may proceed with his ADA claim against Defendant Charleston County because he was a Charleston County employee, and Charleston County is subject to, and may be found liable for, violations of Title I of the ADA. (ECF No. 151 at 27–28.)

Plaintiff's verified amended complaint alleges that he suffers from rectal cancer, that the condition was a "disability" within the meaning of the ADA during the relevant time period, and that Pennington failed to grant his request for additional time to respond to questions that Pennington required Plaintiff to answer about their ongoing dispute over reporting alleged misconduct by the Solicitor's Office, as well as details regarding Pennington's alleged orders to

Plaintiff to not report the alleged misconduct. (*See generally* ECF No. 20 ¶¶ 61–83.) Plaintiff further alleges that Pennington took advantage of his weakened state, during a debilitating round of chemotherapy treatments, to terminate his employment in an attempt to force Plaintiff to accept an unfavorable severance package. (*Id.*) The Magistrate Judge concluded that there is sufficient record evidence to give rise to a genuine issue of fact as to whether Defendants refused to provide a reasonable accommodation that had been requested by Plaintiff, namely an extension of time in which to answer Pennington's detailed questions. (ECF No. 151 at 30–32.) Therefore, the Magistrate Judge found that Charleston County is not entitled to summary judgment on the Second Cause of Action. (*Id.* at 32.)

Plaintiff objects broadly to the Magistrate Judge's conclusions regarding the viability of the ADA claim against Defendant Pennington. Plaintiff states, "For reasons now lost to memory, Plaintiff erroneously sued Pennington in his 'official capacity.' He should have been sued in his individual capacity, and will suffer no prejudice if Plaintiff is allowed to amend his complaint." (ECF No. 155 at 11.) Plaintiff cannot amend his complaint by way of objections to a Report and Recommendation on a motion for summary judgment. The objection is overruled.

Defendants object by noting the Magistrate Judge's prior conclusion, when addressing Plaintiff's First Amendment claims, that Defendant Pennington is considered to be an employee of the State of South Carolina, not Charleston County. (ECF No. 154 at 12.) They cite *McMillian v. Monroe Cty., Ala.*, 520 U.S. 781, 784–93 (1997), in support of their assertion that the Magistrate Judge, when addressing Plaintiff's ADA claim, erred by considering Pennington to be an agent of Charleston County. However, the question presented in *McMillan* was whether an Alabama sheriff, when executing his law enforcement duties in the course of criminal investigations, was acting as a policy maker for the State of Alabama *or* for the particular county that he served, such

that the county could be liable under 42 U.S.C. § 1983 for alleged violations of the plaintiff's constitutional rights by way of the sheriff concealing evidence of the plaintiff's innocence during a murder investigation and trial. *See McMillan*, 520 U.S. at 783–93. The substantive context in *McMillan* is entirely different than the case at bar. To the extent that *McMillan* has any relevance here, it actually counsels against sustaining Defendants' objection. In *McMillan* the Supreme Court stated, with respect to local government liability, "[T]he question is not whether [the government official in question] acts for [the state] or [the county] in some categorical, 'all or nothing' manner. Our cases on the liability of local governments under § 1983 instruct us to ask whether governmental officials are final policymakers for the local government *in a particular area, or on a particular issue*." *Id.* at 785 (emphasis added). Moreover, after noting that the inquiry is dependent on an analysis of state law, the *McMillan* court stated:

> This is not to say that state law can answer the question for us by, for example, *simply labeling as a state official an official who clearly makes county policy*. But our understanding of the *actual function of a governmental official, in a particular area*, will necessarily be dependent on the definition of the official's functions under relevant state law.

*Id.* at 786 (emphasis added). In the instant case, there is no question that Defendant Pennington, who was Plaintiff's boss, was acting on behalf of Plaintiff's employer, Charleston County, when he took actions with respect to the terms of Plaintiff's employment, such as whether or not to grant accommodations for a disability. This is true notwithstanding the fact that Pennington is technically a state employee. Accordingly, this portion of the objection is without merit.

However, Defendant's next objection, arguing that Plaintiff cannot bring a failure to accommodate claim under the ADA because his charge of discrimination did not allege a failure to accommodate, is correct and is therefore sustained. (ECF No. 154 at 13.) Butler's charge of discrimination alleges that Pennington strategically timed his termination during a period when

the treatment he was receiving for his illness was most debilitating and physically draining. (*See* ECF No. 111-15 at 2.) The charge of discrimination says nothing of an alleged failure to accommodate by way of an unwillingness to grant an extension of time in which to answer Pennington's interrogatory-style questions. (*See id.*) Plaintiff seeks to avoid the consequence of this fact by arguing that "[t]he accommodation claim was added by letter dated June 12, 2015. Butler's employment lawyer wrote to the EEOC federal investigator, explaining in detail the accommodation Butler requested, and Mr. Pennington's refusal to grant it." (ECF No. 157 at 14; *see* ECF No. 111-12 at 18-19.) But the absence of the failure to accommodate allegation in the charge of discrimination is fatal to the viability of that pleading theory in this Court:

> The EEOC charge "defines the scope of the plaintiff's right to institute a civil suit." *Bryant v. Bell Atl. Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). As stated by the Fourth Circuit Court of Appeals: "In any subsequent lawsuit alleging unlawful employment practices under Title VII, a federal court may only consider those allegations included in the EEOC charge." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 407 (4th Cir. 2013) (citation omitted). If the plaintiff's claims "'exceed the scope of the EEOC charge and any charges that would naturally have arisen from an investigation thereof, they are procedurally barred.'" *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (quoting *Dennis v. Cty. of Fairfax*, 55 F.3d 151, 156 (4th Cir. 1995)).

*Allen v. Michelin N. Am., Inc. - USA*, No. CV 6:18-791-TMC-KFM, 2018 WL 4346226, at *2 (D.S.C. Aug. 16, 2018) (holding ADA claim for failure to accommodate was barred where failure to accommodate was not alleged in the administrative charge of discrimination), *report and recommendation adopted sub nom. Allen v. Michelin N. Am., Inc.*, No. 6:18-CV-00791-TMC, 2018 WL 4334899 (D.S.C. Sept. 11, 2018); *Cox v. Nucor Corp.*, No. 2:16-cv-03073-PMD-MGB, 2017 WL 9250339, *2–*5 (D.S.C. June 14, 2017) (same). Therefore, Defendants' motion for summary judgment is granted to the extent that the Second Cause of Action purports to state a claim for failure to accommodate pursuant to the ADA. The relevant portion of the Magistrate Judge's Report (*see* ECF No. 151 at 26–32) is modified accordingly.

Defendants further object to the Magistrate Judge's conclusion that the ADA claim may proceed against Charleston County even though the County is not specifically named as a respondent in the administrative charge. (ECF No. 154 at 14.) Defendants argue that the Magistrate Judge inappropriately applied the "substantial identity" test because there is no evidence in the record that the County participated in the conciliation process when Butler's EEOC charge was pending, and there is no evidence that the County was aware of Butler's EEOC charge until he filed and served his verified complaint. (*Id.* at 15.)

The Court agrees and sustains the objection. In finding that Charleston County was not entitled to dismissal on the ground that it was not named in Plaintiff's EEOC filing, the Magistrate Judge relied upon an exception to the general rule that an action under Title VII may generally only be brought against the respondent named in the charge. (*See* ECF No. 151 at 29–30.) The exception may apply where the defendant not named in the charge received fair notice and where the EEOC was able to attempt conciliation with the responsible parties. *See Equal Employment Opportunity Comm'n v. Am. Nat. Bank*, 652 F.2d 1176, 1186 n.5 (4th Cir. 1981) (noting that some courts have developed an exception to this rule "where it is clear that the defendant through some relationship with the named respondent had notice of the charges and participated in the conciliation process"). However, it should be noted that, other than an oblique reference to this exception in a footnote, it does not appear that the Fourth Circuit has directly recognized or adopted this exception. "In applying this exception, some courts have used the 'substantial identity' test, finding that if unnamed defendants are substantially or functionally identical to named ones, then the plaintiff may sue all defendants in a district court action, despite the failure to name some of them in the administrative action." *Scurry v. Lutheran Homes of S.C., Inc.*, No. CA 3:13-2808-JFA-PJG, 2014 WL 4402797, at *3 (D.S.C. Sept. 3, 2014) (citation omitted). Moreover,

[i]n determining whether the named and unnamed defendants are substantially identical, courts have applied the following factors: (1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC charge; (2) whether, under the circumstances, the interests of a named party are so similar to the unnamed party's that for purposes of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings; (3) whether the unnamed party's absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party; and (4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* The Court finds: (1) that Plaintiff could, through reasonable effort, have ascertained the role of Charleston County at the time the EEOC charge was filed; (2) Plaintiff has not shown that the interests of Defendant Pennington, in his official capacity, and Charleston County are so similar that it would be unnecessary to include the County in the conciliation process; (3) it is impossible to determine whether Charleston County's absence from the EEOC proceedings resulted in actual prejudice because it would be inappropriate to make *ex post* assumptions about how the County would have conducted itself if it had been included in the conciliation process; and (4) Plaintiff has not shown that Charleston County somehow represented to Plaintiff that its relationship with Plaintiff was to be through Defendant Pennington. Therefore, the Court concludes that Plaintiff has not made an adequate showing that Defendant Pennington and Charleston County were substantially identical for the purposes of Butler's disability discrimination claim. Consequently, Defendants' motion for summary judgment is granted to the extent that it seeks dismissal of Charleston County as a party defendant to the ADA claim. The relevant portion of the Magistrate Judge's Report (*see* ECF No. 151 at 26–32) is modified accordingly.

### D. Family and Medical Leave Act Claim

With respect to Plaintiff's Third Cause of Action, the Magistrate Judge determined that: (1) Defendant Pennington, in his official capacity, is an arm of the State and cannot therefore be

sued for monetary damages under Plaintiff's FMLA claim by virtue of the Eleventh Amendment; (2) Pennington, in his individual capacity, is entitled to dismissal as a party defendant to the FMLA claim because Plaintiff has not set forth factual allegations in his verified amended complaint to establish that Pennington was ever acting other than in his official capacity when making the decisions or taking the actions at issue in the claim, the evidence does not create an issue of fact as to whether Pennington was acting *ultra vires* for purposes of the claim, and binding authority Fourth Circuit authority precludes FMLA liability for state employees in their individual capacities; and (3) Defendant Charleston County is subject to liability for Plaintiff's FMLA claim under an "interference" theory, specifically relating to the calculation of Plaintiff's leave time, and is not entitled to summary judgment on the claim. (ECF No. 151 at 33–40.)

Plaintiff objects to the Magistrate Judge's conclusion that Pennington cannot be sued in his individual capacity for violations of the FMLA, specifically taking issue with the Magistrate Judge's determination that the State, and not Pennington, was the real party in interest. (ECF No. 155 at 12–15.) However,

> [c]ontrolling Fourth Circuit authority holds claims against state employees in their individual capacities under the FMLA are barred by Eleventh Amendment immunity when the state is the real party in interest. *Martin v. Wood*, 772 F.3d 192, 196 (4th Cir. 2014). The state is the real party in interest when "the allegedly unlawful actions of the state officials [were] 'tied inextricably to their official duties.'" *Id.*

*McKay v. Med. Univ. of S.C.*, No. CV 2:17-45-RMG, 2017 WL 3477799, at *3 (D.S.C. Aug. 14, 2017) (dismissing all FMLA claims against individual defendants because the plaintiff made no factual allegations establishing that said defendants were acting other than in an official capacity when engaging in the conduct of which the plaintiff complained). The allegedly unlawful actions with which Pennington is charged by Butler were inextricably tied to Pennington's official duties. The objection is without merit and is overruled.

Defendants object to the Magistrate Judge's conclusions that the County failed to provide Butler with adequate individualized notice for Butler to understand his FMLA leave, and that there is evidence Butler did not utilize his FMLA leave as he otherwise would have used it. (ECF No. 154 at 17.) Defendants argue that Butler received all required notice regarding his rights and responsibilities under the FMLA when he personally initialed, and had his physician review, prepare, and sign a FMLA leave certification form, which includes a page entitled, "Your Rights and Responsibilities under the Family Medical Leave Act as a Charleston County Government Employee." (*See id.* at 17–18; ECF No. 111-8.) Moreover, Defendants assert that the Magistrate Judge failed to recognize, or otherwise address, that Butler provided no evidence or specificity about how he would have used his FMLA differently. (ECF No. 154 at 18.)

The Court disagrees, and finds that Defendants' objection is insufficient to displace the sound reasoning and analysis of the Magistrate Judge. The Magistrate Judge found that the evidence, when considered in the light most favorable to Plaintiff, is that Plaintiff was told by an office manager that Charleston County had approved his FMLA leave and that he would be receiving a letter from the County confirming this, but that he never received any such letter confirming his leave, designating it as FMLA leave, or otherwise explaining its operation. (*See* ECF Nos. 151 at 39.) The Report further notes that the County began counting Plaintiff's sick leave hours as FMLA hours without providing the promised confirmation, "and Plaintiff asserts that by the time he was told orally by the office manager on June 5, 2014 that his FMLA leave had been approved, Plaintiff had already been charged with approximately 252 hours (4 and 1/2 weeks) of FMLA leave." (*Id.*) In his verified amended complaint and at his deposition, Plaintiff stated that the County's failure to adequately inform him of the consequences of exhausting his FMLA leave before the County began charging him with FMLA hours resulted in him not taking necessary

measures from the beginning to preserve his leave for the long treatment road ahead. (ECF Nos. 20 ¶¶ 103–06; 111-14 at 55.) The Magistrate Judge concluded, "This assertion is sufficient to state an FMLA interference claim for purposes of summary judgment." (ECF No. 151 at 40 (citing *Vannoy v. Fed. Reserve Bank of Richmond*, 827 F.3d 296, 302–03 (4th Cir. 2016) (reversing district court's grant of summary judgment to employer and recognizing an allegation that FMLA leave would have been structured differently as sufficient prejudice, resulting from an FMLA notice violation, to support an FMLA interference claim)).) "There are two types of individualized notice that the employer must give an employee who may be entitled to FMLA leave: a 'rights and responsibilities notice,' [29 C.F.R.] § 825.300(c); and a 'designation notice,' *id.* § 825.300(d)." *Vannoy*, 827 F.3d at 301. The requirements for FMLA designation notice are laid out in the Code of Federal Regulations:

> The employer is responsible in all circumstances for designating leave as FMLA–qualifying, and for giving notice of the designation to the employee as provided in this section. When the employer has enough information to determine whether the leave is being taken for a FMLA–qualifying reason (e.g., after receiving a certification), *the employer must notify the employee whether the leave will be designated and will be counted as FMLA leave within five business days absent extenuating circumstances.*

29 C.F.R. § 825.300(d)(1). Plaintiff's FMLA allegations amount to a claim that Charleston County failed to timely provide him with designation notice, and he has provided sufficient evidence of such failure in the form of his verified amended complaint and deposition testimony to survive summary judgment. Furthermore, the Court finds that Plaintiff has provided sufficient evidence that he would have structured his FMLA leave differently—for instance by using some of his accumulated sick leave and annual leave, or by working from home—to satisfy the prejudice prong of an interference claim premised on a FMLA notice violation. (*See* ECF Nos. 20 ¶¶ 103–06; 111-14 at 55.) Accordingly, Defendants objections are overruled and the motion for summary judgment

as to the FMLA claim is denied.

### E. Plaintiff's Defamation Claim

After explaining the various factual bases for Plaintiff's defamation claims against Defendant Pennington and considering Pennington's arguments for why Plaintiff's defamation claim should be dismissed, the Magistrate Judge concluded that Pennington is not entitled to dismissal of the defamation claim against him in his individual capacity because Plaintiff has clearly asserted that Pennington's allegedly defamatory conduct was accompanied by actual malice, and a sufficient question to be decided by the finder of fact has been presented. (*See* ECF No. 151 at 40–43.) The Magistrate Judge further found that, when considered in the light most favorable to the Plaintiff, a genuine issue of material fact remains as to whether Pennington would be entitled to the affirmative defense of conditional or qualified privilege because the comments he made or published about Plaintiff were done in the course and scope of his position as the Ninth Circuit Public Defender. (*See id.* at 43–44.) The Report explains that, when considered under the summary judgment standard, the evidence presents jury questions as to whether the comments made by Pennington were made with malice, and as to whether Pennington exceeded any privilege he may have otherwise had in making the statements concerning Plaintiff. (*Id.*) Finally, the Magistrate Judge concluded that Pennington is not entitled to summary judgment on Plaintiff's defamation claim on account of Plaintiff being a public figure because Plaintiff has adequately alleged that the comments and publications by Pennington were made with actual malice, and this remains a question of fact for the jury. (*Id.* at 44.)

Defendant Pennington makes lengthy written argument objecting to the Magistrate Judge's reasoning and conclusions regarding Plaintiff's defamation claim. (*See* ECF No. 154 at 19–29.) Essentially, Pennington claims that the Magistrate Judge erred by failing to consider the details of

four discrete actions by Pennington that Plaintiff contends amount to defamation, and that when the details are properly considered with respect to each action individually, each defamation theory fails either by lack of sufficient factual basis or by application of the affirmative defenses of absolute privilege and/or conditional/qualified privilege. (*See id.*) These arguments present as potentially effective summation at trial, but not as valid reasons to grant summary judgment on the defamation claim. After *de novo* review, the Court finds no error in the Magistrate Judge's analysis, and agrees that jury questions remain regarding all pertinent aspects of the defamation claim and possible defenses. Accordingly, Defendant Pennington's objections are overruled, and the motion for summary judgment as to Plaintiff's Fourth Cause of Action is denied.

### F. Breach of Implied Contract Claim

The Magistrate Judge considered Plaintiff's novel theory that Defendant Pennington, in his official capacity, and/or Charleston County breached an implied contract of Plaintiff's employment that consisted of a fundamental understanding that the employer attorney and employee attorney would both conduct their respective legal practices in accordance with ethical standards of the profession, and determined that there is no basis for such a claim under South Carolina law. (ECF No. 151 at 45–50.) Plaintiff raises what appears to be an objection to this determination (*see* ECF No. 155 at 15); however, the objection is conclusory and does not point to any specific error in the reasoning or conclusions of the Magistrate Judge. Accordingly, the objection is overruled, the motion for summary judgment is granted as to Plaintiff's Fifth Cause of Action, and the breach of implied contract claim is dismissed.

### G. After-Acquired Evidence

Defendants argue that the Magistrate Judge's failure to address the matter of after-acquired evidence with respect to the First Amendment retaliation claim constitutes error. (ECF No. 154 at

30.) Defendants contend that based upon information gained in discovery about Butler's negative statements and actions regarding Pennington, Pennington would have terminated Butler's employment as early as February 22, 2014, irrespective of Butler and Pennington's ongoing conflict about reporting alleged ethical misconduct by the Solicitor's Office, and Pennington's decision to do so would have been appropriate and justified. (*Id.* at 30–31.) Defendants assert that their affirmative defense of after-acquired evidence was ripe for disposition at the summary judgment stage and the Magistrate Judge's failure to dispose of the issue was error. (*Id.* at 31–32.) The Court finds that remaining questions of fact with regard to the First Amendment retaliation claim and how Defendant Pennington may or may not have reacted to the discovery of Butler's negative statements and actions about Pennington render Defendants' after-acquired evidence defense, and any associated limitation on liability, more appropriate for disposition at trial. The Magistrate Judge did not err by omitting discussion of this affirmative defense in the Report. Accordingly, the objection is overruled.

### H. Failure to Mitigate Damages

Finally, Defendants argue that the lack of any discussion of their failure to mitigate damages defense in the Magistrate Judge's Report constitutes error. (ECF No. 154 at 32–34.) Defendants assert that Butler's claim for lost wages is barred because he made no effort to search or apply for new employment after being terminated by Pennington. (*Id.* at 32.) Again, the Court finds that the substance of this affirmative defense is more appropriate for disposition at trial. There is a genuine dispute as to whether Plaintiff's limited efforts to seek alternative employment during the relevant time period was reasonable in light of the severity of his medical condition. (*See, e.g.*, Butler Dep. 26:8–31:10, ECF No. 111-14 (describing limitations on Butler's ability to work due to cancer treatment and related surgeries, as well as Butler's intermittent efforts to work as a solo

practitioner).) The Magistrate Judge committed no error by omitting discussion of the failure to mitigate damages defense in the Report, and the objection is overruled.

## CONCLUSION

After careful consideration of the relevant materials and law, and for the reasons set forth above, the Court adopts the Report (ECF No. 151) of the Magistrate Judge and incorporates it herein, *as modified*, and to the degree not inconsistent with this ruling. Accordingly, Defendant Pennington's motion for summary judgment on his counterclaim (ECF No. 110) is DENIED, and Defendants' motion for summary judgment on Plaintiff's claims (ECF No. 111) is GRANTED in part and DENIED in part.

Specifically, Defendant Pennington, in his official capacity, is dismissed from the First Cause of action insofar as it seeks damages, but not insofar as it seeks injunctive relief. Defendant Charleston County is dismissed as a party defendant to the First Cause of Action. The motion for summary judgment regarding the First Amendment claim against Pennington in his individual capacity is denied. Defendants' motion for summary judgment is granted to the extent that the Second Cause of Action purports to state a claim for failure to accommodate pursuant to the ADA, and the ADA claim is dismissed with prejudice because both Defendant Pennington, in his official capacity, and Charleston County are entitled to dismissal as party defendants to the claim. Defendant Pennington, in both his official and individual capacities, is dismissed as a party defendant to the Third Cause of Action under the FMLA, but the FMLA claim persists against Charleston County. The motion for summary judgment with respect to Plaintiff's defamation claim is denied. The motion for summary judgment as to Plaintiff's Fifth Cause of Action for breach of implied contract is granted, and that claim is dismissed with prejudice. Plaintiff has withdrawn his Sixth and Seventh Causes of Action, and

those claims are accordingly dismissed without prejudice.

**IT IS SO ORDERED.**

/s/ Bruce Howe Hendricks
United States District Judge

April 16, 2019
Greenville, South Carolina